Robertson, J.
The plaintiff was entitled to the security of the liability of all the parties to the note in question who were originally liable, and the defendants were bound to take all necessary steps to secure that liability. For any failure to take such steps the defendants were liable to the extent of any damages suffered by the plaintiff. The maker, of course, is liable at all events; and if he is solvent no damage has been suffered; if not, the defendant is liable for not charging the indorsers, unless they never were Bable or were insolvent and worthless. In such case it is not necessary for the plaintiff to prove any solvency of the indorsers; Ms derefiction of duty casts the burden on *463 the delinquent agent, of disproving their solvency. (Walker v. Bank of State of New York, 5 Seld., 582; Bank of Utica v. Smedes, 3 Cow., 662; Bank of Utica v. McKinster, 11 Wend., 475; Allen v. Suydam, 20 Id., 329, Per Chancellor Walworth.) The fact that in some cases the plaintiff introduced evidence to prove the insolvency of the maker or solvency of the drawer, does not affect the rule. (Bank of Utica v. McKinster, 11 Wend., 473; Smedes v. Bank of Utica, 20 Johns., 372; Mechanics’ Bank v. Merchants’ Bank, 6 Metc., 13; East River Bank v. Gedney, 4 E. D. Smith, 582.) Possibly the burden may lie on the plaintiff to prove the insolvency of the maker, but in this case that was prima facie established. The plaintiff is not bound to wait forever for a chance of collecting from the maker: his money is due forthwith. The attempt to show that Mrs. Saltus was never responsible failed.
The defense, therefore, of the defendants rest in the continued liability of Saltus & Co., on the note, and their waiver of demand and notice; and they also claim that the .$1,000 paid by the maker to Saltus & Co. should go in mitigation of damages. Ho such partial defense as the last is set up in the pleadings, nor was any application made to amend them for the purpose; and if it had been made, it would have been untenable. There is no evidence that the maker of the note paid such sum to the indorser to be paid over to the holder; he paid it to him as his creditor on a general promise to take up the note and protect him. It became the indorsers’ money; no action lay for it in the plaintiff’s favor. The indorsers promised, in consideration of its payment, to take up the note and give the maker credit for the residue of what was due, for a year, which the latter promised to pay, the note to be retained as an evidence of debt. Any other person might have made the same promise, and yet not have discharged the defendants from liability on a contract made before such promise. Ho such secret collateral agreement could discharge them.
The only remaining question is, if Saltus & Co. are
*464 liable as indorsers. They may have been liable to the plaintiff on their new undertaking to pay the note, although made to a third person, (Del. & Hud. Can. Co. v. Westchester Co. B'k, 4 Denio, 97,) and so might any other person on a similar promise, but no such liability is set up in the pleadings, and the relation in such case is different. The real question here is, whether knowledge by the indorser of the inability of the maker to pay, his notice to them that he would not pay, and their promise to pay, amounts to such waiver of notice as to make them liable as indorsers. It has been held that where the indorser takes upon himself the duty of inquiring if a note is paid, (Phipson v. Kneller, 1 Stark., 116,) or has an assignment of all the maker’s property, (Mechanics' B'k v. Griswold, 7 Wend., 175,) or is preferred in a general assignment, (Coddington v. Davis, 3 Denio, 16; Taylor v. French, 4 E. D. Smith, 458,) or becomes otherwise the party to take up the note as between him and the maker, by taking security, (Seacord v. Miller, 3 Kern., 58,) or releases the maker, (Burke v. McKay, 2 How. U. S. R., 66,) or when.he is furnished by the maker with all the funds he has, or equal to the amount of the note, and agrees therewith to pay the note, (Ilsley y. Jewett, 3 Metc., 434,) either of such acts operates as a waiver; and so even a promise to take up a note if not paid by another. (Boyd v. Cleveland, 4 Pick., 525; Marshall v. Mitchell, 35 Maine, [5 Red.,] 221.) It is undoubtedly true, as a general rule, that where any steps to charge the indorser are prevented by some acts of his which puts the holder off his guard, the latter is excused, (Bruce v. Lytle, 13 Barb., 163; Spencer v. Harvey, 17 Wend., 489,) but I am not prepared to say that, therefore, a promise to the maker, not known to the holder, would be sufficient. The fact that the maker is thrown off his guard in preparing to pay the note, does not affect the relations of the holder dnd maker; it does not operate either as an estoppel or contract between them. But when the latter promises the former to pay absolutely and unconditionally, he has a right to assume that the duty of notifying the indorser of a failure *465 on the maker’s part is dispensed with, and that he need not rely upon the maker at all. Notwithstanding a promise by the indorser to the maker, the former may not be able to pay and still not lose his right of proceeding forthwith against the maker, to secure himself, which is the object of the notice. When the promise is made only privately to the maker-of the note, the indorser does not expect the holder to rely upon it, because it is not made to him. A promise to pay, unconditionally, does not operate as a contract but as an estoppel, and when made to the holder is an admission that the indorser will suffer no injury for want of demand and notice, which is the test applied by Judge Nelson, in Mechanics’ Bank v. Griswold, (7 Wend., 168.) I cannot, therefore, subscribe to the reasoning in Marshall v. Mitchell, (ubi sup.,) which makes a promise to the maker equivalent to a promise to the holder as a waiver; and no other case goes so far.
But even if it were so, the defendants in this action ought not to be allowed to avail themselves of a private agreement, unknown to the plaintiff, and first disclosed on the trial; and that, too, where the evidence of the parties concerned is conflicting as to the whole transaction. The result, perhaps, might be, that in this action the plaintiff would fail to recover against the defendants, by the view the Jury would take of the testimony; and in the action by him against the indorsers he might also fail from a different view taken of the same testimony, and thus fail altogether by the defendants’ neglect of duty. I think, in such case, the evidence must bring home knowledge to the holder, at least before the commencement of the action, of the existence of such waiver, if not his actual presence when it was made, before he can be deprived of his right to recover.
The plaintiff is of course not entitled to a double satisfaction, and the defendants are, therefore, probably entitled to subrogation to his rights to the extent of whatever part of the note they may pay. If they pay the whole *466 ' note, they may proceed against the indorsers, and enforce. their liability if they can establish it.
The decision *of the Court that no waiver of demand and none had been proved, and its refusal to charge that the plaintiff could not recover unless Kichols was insolvent, "were correct. The counsel for the -defendants did not require any other facts to be submitted to the Jury; the motion for a nonsuit was properly denied, and there was, therefore, no error in the charge or exclusion of evidence.
The judgment should be affirmed -with costs.
White, J., concurred in affirming the judgment)