## L. Knaebel and J. J. Tracy v. O. D. Wilson, Appellant.

Landlord and Tenant: MORTGAGING FUTURE CROPS. A landowner can not mortgage future crops and thereby affect the rights of tenants who leased and entered into possession before the mortgage was made.

Practice. Conflicting evidence not reviewed on appeal.

SAME. Misconduct in argument can not be shown, on appeal, by affidavits.

*Appeal from Harrison District Court.*—HON. GEORGE W. WAKEFIELD, Judge.

THURSDAY, DECEMBER 13, 1894.

ACTION at law to recover for the conversion of some corn alleged to belong to plaintiffs. Trial to a jury. Verdict and judgment for plaintiffs, and defendant appeals.—*Affirmed*.

*J. S. Dewell* for appellant.

*S. H. Cochran* for appellees.

DEEMER, J.—The defendant is a constable in Harrison county, and, as agent for one Samuel Haas, took possession of a certain crib of corn in that county, under a chattel mortgage made by one Minnie Murdock to Haas on April 21, 1891. The plaintiffs claim to be the owners of one half of the corn in this crib, and that the defendant wrongfully converted the same to his own use. The jury found that plaintiffs were the owners of one half of the corn taken by the defendant, less the amount they had already received. It is insisted that the verdict has no support in the testimony, and is the result of passion and prejudice. The evidence shows that some time in January, 1891, Haas sold the land on which the corn in question was grown to one Minnie Murdock, for nine thousand dollars, received a small cash payment, and took notes and mortgages for the balance. He claims in his testimony that these mortgages covered all the corn which would be raised on the premises during the coming year, but this is denied by the plaintiffs. It is not essential, however, that we determine which is correct in this controversy, for, if it were material, it is evident that the jury was justified in finding that the chattel mortgage executed at the time of the sale did not include the corn crop. But we do not regard this a controlling or essential question in the case, for the reason that the defendant is not claiming under a mortgage executed at the time of the sale, but upon one executed by Murdock to Haas the twenty-first day of April. The evidence tends to show that the plaintiffs, some time in the month of March, leased the premises from Murdock for the term of one year, and were to turn over, as rent therefor, one half the corn raised thereon during the year 1891. Defendant denies that plaintiffs were tenants of Murdock, and insists that they were em-

ployed by Murdock, as servants or agents to conduct the farm for her. On this proposition there is a square conflict in the testimony, and, under familiar rules, we can not disturb the finding of the jury, which must have been that plaintiffs were tenants of the land.

When the corn matured, it was gathered by the plaintiffs, and placed in a crib upon the premises. And they testify that they divided the crib into equal parts by stretching wires through it near the center from east to west, and by use of wedges at the bottom, so as to distinguish their corn from their landlord's. After the division of the crib, plaintiffs took from the north end, which they claimed as theirs, four hundred and ninety-seven bushels of corn, and were proceeding to haul it away, when defendant took possession of all the remaining corn, under the chattel mortgage.

The serious dispute in the case is as to the number of bushels of corn raised by the plaintiffs upon the leased land. Plaintiffs say they planted one hundred acres, which produced an average of thirty bushels to the acre. And one witness for plaintiffs testifies that he measured the crib after it was full, and found it was seventy-one feet long, eight feet wide, and twelve feet high, and that, according to the usual rule it would hold something over three thousand bushels. When the defendant hauled the corn away, it measured by weight, according to the testimony, one thousand, five hundred and eighty-seven bushels and ten pounds, and the crib measured forty-four feet long, eight feet wide, and twelve feet high. The jury found that one thousand, eight hundred and eighty-four bushels of corn were raised upon the premises that year, and that the defendant took one thousand, five hundred and eighty-seven bushels thereof, and that plaintiffs were entitled to four hundred and forty-five bushels, which they found to be worth one hundred and

eleven dollars and twenty-five cents. It is quite evident that some of the witnesses were mistaken as to the dimensions of the crib, or else it was torn down and reconstructed between the times the different witnesses saw it. And it may be true that the jury made a mistake in their finding as to the amount of corn grown upon the land. But we can not say there is not sufficient evidence upon which the general verdict can stand. That there were but one thousand, five hundred and eighty-seven bushels of corn in the crib when defendant took possession of it, and that he took all there was in it, are matters about which there is no dispute. There is testimony from which the jury could well have found that plaintiffs had not received more than four hundred and ninety-seven bushels as their share of the crop. There is also testimony that two hundred of this one thousand, five hundred and eighty-seven bushels of corn was raised by one Stevens, who was a sublessee of the land under the plaintiffs, and that this two hundred bushels was put in the end of the crib apportioned to Murdock. With these figures as a basis, the jury was right in finding that the defendant converted four hundred and forty-five bushels of the plaintiffs' corn. In doing this, they would have to disregard the estimates made by the witnesses who measured the crib, and the opinions of the plaintiffs as to the amount of corn raised by them, but this they had the right to do. We think we have demonstrated that there is sufficient testimony to sustain the verdict, and that we can not disturb it.

II. It is contended on the part of appellant that the Haas mortgage covered all the crops grown on the premises during the year 1891, and that it is prior in time and right to the plaintiffs' claim.

We have already noticed the question as to the mortgage which it is claimed was executed at the time of the sale of the land, and as it is apparent that the

mortgage under which defendant now claims was executed after plaintiffs claim they leased and entered into the possession of the land, the contention is without merit, for the owner of the land could not mortgage a crop he did not own, and in which he had no title.

III. Complaint is made of certain language used by counsel for appellee in his closing address to the jury. His remarks are attempted to be shown by affidavit attached to the motion for a new trial. The remarks attributed to him are denied in an affidavit filed in resistance to the one produced by defendant. We have repeatedly held that we can not consider such affidavits. *Rayburn v. Railway Co.*, 74 Iowa, 637, 35 N. W. Rep. 606, and 38 N. W. Rep. 520; *State v. Clemons*, 78 Iowa, 123, 42 N. W. Rep. 562; *Nelson v. Railway Co.*, 77 Iowa, 405, 42 N. W. Rep. 335.

IV. Criticism is made of the instructions given by the court. So far as we can observe, they fairly meet the issues presented by the pleadings, and were correct, so far as given. If defendant desired more explicit ones, it was his duty to ask them. Appellees' motion for judgment on appeal bond is sustained, and judgment ordered accordingly. We discover no error in the record, and the judgment is AFFIRMED.