STATE OF IOWA, Appellant, v. C. S. COOPER.

**Libel** *per se:* INSTRUCTION. A publication charging a lawyer with
1    such conduct in the practice of his profession as will necessarily expose him to contempt and ridicule, and deprive him of the benefits of public confidence is libelous *per se;* and the court should unequivocally so instruct the jury.

**Same:** MALICE. If the statements are false it will be presumed that
2    they were malicious and wrongful, unless privileged.

**Privileged publications.** The publication of judicial proceedings is
3    privileged, but an article impugning the motives of a lawyer in instituting and conducting the proceedings, charging improper and dishonest conduct and other grossly unprofessional acts in connection therewith, are not privileged.

**Same:** EXTENT OF PRIVILEGE. Where defendant was engaged in the
4    publication of a magazine devoted to the cause of a temperance organization, but which had a wide circulation reaching many who are not members of the society, the publication of an article therein impugning the motives of an attorney who had instituted disbarment proceedings against other attorneys who had acted for the organization, if privileged as to members of the organization,

was broader than the duty to disclose the improper conduct, exceeded the privilege and was not a defense to the charge of libel.

**Same.** Publications which are privileged as being in the discharge of a duty must be confined to the persons to whom the duty is owing; and to justify the publication of libelous matter on the ground that the author believed it to be true, there must be some other reason than a mere desire to promote the public welfare.

**Same:** REASONABLE CAUSE. That the publication of libelous matter is based upon reasonable and proper cause will not justify it, if false, unless it is privileged.

**Appeal by State:** AFFIRMANCE OF JUDGMENT. Although a verdict may be presumptively wrong because of erroneous instructions, it will not be reversed or set aside on the State's appeal, but the judgment will be affirmed by operation of law.

*Appeal from Monroe District Court.*— HON. M. A. ROBERTS, Judge.

THURSDAY, JUNE 4, 1908.

PROSECUTION for libel. There was a verdict and judgment for defendant. The State appeals. *Affirmed* by operation of law.

*H. W. Byers,* Attorney General, *C. W. Lyon,* Assistant Attorney General, and *W. H. C. Jaques,* for the State.

*J. C. Mitchell, J. T. Clarkson,* and *J. R. Price,* for appellee.

MCCLAIN, J.— The defendant was charged with having published, in a newspaper known and designated as the " Dial of Progress," an article headed " Temperance Situation in Monroe County," in which it was stated that in a proceeding to disbar certain attorneys the prosecutor, W. E. Giltner, a member of the bar, " muck-raked everything in the practice of the defendants for five or more years, but could establish nothing of a serious nature against them,"

schemed for the disbarment of such attorneys " simply be-
cause they were the faithful attorneys of the temperance
people, and had many cases pending in court," committed
a grossly unprofessional act by testifying as a witness, with-
out withdrawing his appearance as one of the prosecutors
in the case, and was guilty of other unprofessional conduct.
The article also stated that " many persons declared the
prosecution seemed more like an attempt to white-wash the
county attorney for much alleged irregular and unprofes-
sional conduct with the grand jury," and that said Giltner was
one of the committee to investigate the charges against the
attorneys referred to, and " in the discharge of the sup-
posed important duty evidence upholds the accusation that
he attempted to go out of his way, and deliberately falsified
court records in preparing the accusations against our at-
torneys, and even went so far as to suppress certain affidavits,
obtained by him by reason of his appointment to make a full,
fair, and impartial investigation. . . . He promised
to accept our work, but we were always unable to get him
to do anything, because he was afraid of popular sentiment.
The people of Monroe county should know that W. E.
Giltner has contributed his labor and counsel in opposition
to the cause of temperance and sobriety in Monroe county."
At the time this publication was made the defendant was
the district superintendent of a temperance association, the
official organ of which was the Dial of Progress, in which
the publication charged as libelous was made over the name
of defendant, describing himself as district superintendent.
It is unnecessary to state the facts surrounding and form-
ing the basis of this prosecution, further than to say that
the defendant, while a minister of the gospel in the city of
Albia, was, with others, instrumental in securing the in-
stitution of prosecutions for violation of the liquor laws, and
in that connection consulted and employed Giltner as an
attorney, but afterwards employed other attorneys in his
stead that thereafter Giltner, with other members of the

bar of Monroe county, instituted proceedings for disbarment of the other attorneys thus employed on account of unprofessional conduct, and that the publication in the Dial of Progress related to the proceedings in this action for disbarment.

Of the many errors assigned only one seems to be of sufficient importance to justify discussion in an appeal by the State, which cannot affect the result of the verdict of the jury acquitting the defendant, but need be considered only for the purposes of settling questions of law which are of general importance. The court left it to the jury to say whether the published article was, as to Giltner, defamatory and malicious, and also instructed that, if the publication was made in good faith upon any subject-matter in which the defendant had an interest, or in which he had or honestly believed he had a duty to a person having a corresponding interest or duty, although it contained matter which, without the occasion upon which it was made, would be defamatory, it was privileged; and that such privilege embraces cases where the duty is not a legal one, but is of a moral or social character of imperfect obligation, and further that if defendant honestly believed the matter set out to be true, and honestly and without malice believed it to be his duty to make such matter known to the members of the organization in which he was an officer, and to all other persons who were in sympathy with his organization and approved its labors and purposes, and that it was impracticable for him to convey such knowledge except by publication in the organization's public paper, then the publication was privileged, and the verdict should be for the defendant, if the publication was based on reasonable and proper cause; and if published in the manner and under the circumstances described, then it would be privileged, even though false.

These instructions were clearly erroneous. There was no ambiguity in the language justifying the submission to

the jury of the question whether it was libelous. It plainly

**1. LIBEL *per se*: instruction.** charged Giltner with improper conduct and dishonest motives in the discharge of his duty as a lawyer. It is immaterial whether, with reference to the charge of falsifying the records, the intention was to charge a crime in altering the public records, or misconduct as a lawyer in misrepresenting them to the court. In either event the charge was of such conduct as in the practice of his profession would properly and necessarily expose the lawyer with reference to whom the statement was made to contempt and ridicule, and deprive him of the benefits of public confidence, and this was enough under Code, section 5086, defining criminal libel to constitute the offense.

If the statements were false, they would be presumed to be malicious and wrongful, unless some occasion of privilege should be made out. The court should have told the

**2. SAME: malice.** jury unequivocally that such a publication, with reference to a lawyer, was *per se* libelous. *State v. Wait,* 44 Kan. 310 (24 Pac. 354); *Mosnat v. Snyder,* 105 Iowa, 500. And, in general, see, *Morse v. Times-Republican Ptg. Co.,* 124 Iowa, 707.

In the second place the publication was not privileged in such sense that, although false, the defendant could be excused on proof that it was made in good faith and in the

**3. PRIVILEGED PUBLICATIONS.** belief that it was true. The publication of judicial proceedings is privileged, but comments on the motives of parties and deductions drawn from such proceedings as to whether they are instituted and carried on in good faith or otherwise are entirely beyond the scope of such privilege. *Hulbert v. New Nonpareil Co.,* 111 Iowa, 490; *McAllister v. Free Press Co.,* 76 Mich. 338 (43 N. W. 431, 15 Am. St. Rep. 318); Newell, Slander & Libel (2d Ed.) section 147; *Atlanta News Pub. Co. v. Medlock,* 123 Ga. 714 (51 S. E. 756, 3 L. R. A. [N. S.] 1139).

The court allowed the jury to find that the article was

privileged as a communication from the defendant to the members of his organization and all other persons in sympathy therewith and approving of its labors and purposes. It is to be borne in mind that the organization had no more definite object than promoting the cause of temperance, and that the communication was printed in a periodical publication, circulating not only through all parts of the State, but going into nearly all the States of the Union, and sent not merely to the members of the particular organization of which defendant was an officer, but to all who would subscribe for it, and, no doubt, to many others whom it was desired to interest in the temperance cause. Where qualified privilege is relied upon for publications, in their nature defamatory, but made with reference to a candidate for office or under other circumstances justifying the publication in the discharge of a public duty, the privilege is not broader than the duty, and if such publication is so made as to reach others than those to whom the communication in the discharge of a duty is called for, the privilege is exceeded, and does not serve as a defense. *State v. Haskins,* 109 Iowa, 656.

*4.. Same: extent of privilege.*

Moreover, we think that the general communication of matter promotive of temperance principles did not furnish an occasion calling for the exercise of any peculiar privilege. The promotion of religion is in the interests of the public welfare, and affords opportunity for the greatest devotion and assiduity on the part of many people, and yet a minister, who for the purpose of inculcating religious principles should hold a supposedly recreant member of his flock up to ridicule, by impugning the honesty of his motives and the probity of his actions, would not be excused from answering for false statements on the ground that he believed them to be true, and made them in good faith for the benefit of religious people. See *State v. Lomack,* 130 Iowa, 79. The publications which are privileged as being confidential and in the discharge of

*5. Same.*

a duty are those which are strictly limited to the persons directly concerned, and the person making them must have something more resting upon his conscience than the mere desire to promote the public welfare to justify him in publishing defamatory matter on the ground that he believes it to be true. *McAllister v. Detroit Free Press Co.,* 76 Mich. 338 (43 N. W. 431, 15 Am. St. Rep. 318); *State v. Balch,* 31 Kan. 465 (2 Pac. 609); *State v. Keenan,* 111 Iowa, 286.

There was no election impending involving action with reference to the promotion of temperance or the enforcement of the liquor laws, and we see no occasion in the direct interest of temperance requiring that the defendant should make defamatory statements in regard to the prosecuting witness, even if he believed them to be true and was zealous to further the interests which his organization had been formed to promote. In the absence of some circumstances of privilege it is not true that a publication, based upon reasonable or proper cause, is justifiable, even though false, and the instruction of the court in this respect was erroneous. *State v. Haskins,* 109 Iowa, 656; *Berger v. Freeman Tribune Pub. Co.,* 132 Iowa, 290.

6. SAME: reasonable cause.

Although we find the verdict in defendant's favor to have been presumptively wrong, by reason of the erroneous rules of law laid down by the court for the guidance of the jury, we have no authority or occasion to do more than to thus express our view with reference to the errors assigned.

7. APPEAL BY STATE: affirmation of judgment.

The judgment is, by operation of law, *affirmed.*